ELLERY O'BRIEN

*vs.*

STATE OF MARYLAND.

*Bastardy* : *proceedings under Chapter* 163 *of the Acts of* 1912 ;
*loss of papers taken and prepared before the justice; juris-*
*diction of Circuit Court. Pleading* : *pleas to juris-*
*diction and in bar; not to be submitted at*
*one and the same time.*

Although no motion to quash, with the reasons assigned, be
set out in the record, yet if the docket entries and the bill of
exceptions taken to the action of the Court in overruling the
motion, show that such motion was passed on, and pleas to the
jurisdiction in the record set forth the grounds relied on in
the motion, the Court of Appeals will not stop to consider
whether the motion itself could be considered, where the State
raised no question over the matter, and there are important
questions that should be determined.     p. 272

Under Chapter 163 of the Acts of 1912, the fact that the
papers taken by the justice of the peace in bastardy proceed-
ings (the warrant, bond, testimony and cross-examination) were
lost in transmission through the mail, and never received by
the Clerk of the Circuit Court to whom they were addressed,
does not oust the jurisdiction of the Circuit Court.     p. 279

O'BRIEN *vs.* STATE. 271

The State may prove by parole the contents of such of the papers as may be necessary.                    p. 278

Under the statute, the proceedings before the justice are merely a preliminary examination for the purpose of holding the accused for Court, should the evidence justify it.          p. 276

The justice renders no judgment, and the proceedings in the Circuit Court are not in the nature of a review.          p. 279

The papers required to be taken before the justice, and made out and transmitted by him, are for the protection of the State, county and prosecutrix, and not for the protection of the accused.                    p. 279

The fact that the order for the bond required was not given by the justice in writing is no injury to the traverser.     p. 280

The bond, required by the statute, is for the protection of the State, county and prosecutrix; and the fact that the bond was not signed by the traverser as directed by the statute is not a matter that affects the jurisdiction of the Circuit Court.

p. 280

The failure of the justice to keep a copy of the bond does not affect the jurisdiction of the Circuit Court.          p. 281

In criminal proceedings, a plea to the jurisdiction and a plea to the merits can not be submitted to the jury at the same time.
pp. 282-283

Communications to medical men in their professional capacities are not privileged.                    p. 284

*Decided May 7th, 1915.*

Appeal from the Circuit Court for Charles County. (BEALL and CAMALIER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Fredk. Dallam* and *Sydney E. Mudd* (with whom was *Jno. F. Mudd* on the brief), for the appellant.

*Edgar Allan Poe, the Attorney-General,* and *Clarence M. Roberts, the State's Attorney for Prince George's County,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant was indicted in the Circuit Court for Prince George's County for bastardy and fornication, and on his application the case was removed to Charles County. He was found guilty and was sentenced to give bond for the maintenance and support of the child mentioned in the proceedings. From that judgment this appeal was taken. There are nine bills of exception in the record, but the most important questions were raised by a motion to quash the indictment, by rulings on replications to pleas to the jurisdiction of the Court filed after the motion to quash was overruled and by an exception taken to the instruction given the jury as to the form of their verdict.

First. There is no motion to quash, in which the reasons were assigned, set out in the record, but as the docket entries and a bill of exceptions taken to the action of the Court in overruling the motion show that such motion was passed on, and as the pleas to the jurisdiction do set forth the grounds relied on (which we understand to be the same as those relied on for the motion) we will not stop to determine whether the motion of itself could properly be considered by us. We pursue this course because the State has raised no question about it, and it is important that some of the questions raised be determined, inasmuch as Chapter 163 of the Acts of 1912 has not been before this Court for construction.

The Act of 1912 repealed and re-enacted Article 12 of the Code, entitled "Bastardy and Fornication," and made many material changes on the subject. It will be helpful to refer to so much of that Act as is involved in this case. Section 1 requires a justice of the peace, upon written information

under oath of a woman being pregnant with or delivered of a bastard child, to cause her to be brought before him, and upon failure to disclose the father to give bond to indemnify the county, etc. Section 2 provides that, "Whenever any woman, who has been delivered of or who is pregnant with a bastard child, shall in writing under oath, accuse any person before a justice of the peace, having criminal jurisdiction, of being the father of the said bastard child, such justice of the peace shall by his warrant cause such person to be brought before him," etc. Section 3 is, "Upon the appearance of said accused person, the justice of the peace shall pass an order requiring said accused person to give bond to the State of Maryland in a penalty not exceeding $500, with good and sufficient securities, conditioned that he will appear at the next term of the Circuit Court of the county from which said warrant issued, or the Criminal Court of the City of Baltimore, as the case may be, or to any later term of such Court, after the birth of said child. *In* default of such security, said accused person shall be committed to the custody of the Sheriff until such bond is given or until final judgment is rendered by said Court. *In* case the bond provided for by this section shall be forfeited, the Court may from time to time direct that the proceeds thereof be applied for the maintenance and support of said bastard child." In the Act, as published in the Laws of 1912 and in the 3rd Volume of the Code, there is only a comma before the word "In" in each of the two instances above where that word is italicised, but manifestly there should be something more than a comma, and we have substituted a period. Section 4 provides: "At the hearing before said justice of the peace, it shall be his duty to take down and reduce to writing the testimony of the woman making complaint, together with the cross-examination of said woman by the accused, or his attorney, which testimony shall be signed and sworn to by said woman, and he shall transmit the same with the original papers in the case to the Circuit Court of the county

or to the Criminal Court of the City of Baltimore, as the case may be, and such testimony shall be admitted in evidence at the trial of the accused person under section 5 of this article, if said accusing witness should die prior to the time of such trial." Section 5 is: "Immediately upon the passage of said order, said justice of the peace shall transmit the original papers and a transcript of the proceedings had before him to said Circuit Court or the Criminal Court of the City of Baltimore, as the case may be, and thereupon, but not before said woman shall have been delivered, the same proceedings shall be had as in other criminal cases, and if the accused person shall be found guilty by the verdict of a jury, or by the Court, if the case be tried before the Court, the Court shall immediately order such person to give bond to the State of Maryland in a penalty not exceeding $500, with good and sufficient securities conditioned to pay for the maintenance and support of said child," etc. Section 6 authorizes the Court in its discretion to require the mother to give bond to indemnify the county or city; and section 7 is: "All bonds or recognizances required under this article to be taken or given before a justice of the peace shall be immediately returned by said justice of the peace (a copy thereof being retained by the said justice of the peace), to the clerk of the Circuit Court of the county or the Criminal Court of Baltimore City as the case may be; and the clerk of the Court shall record said bonds or recognizances together with any other bonds or recognizances taken or given by the order of the Court therein among the proceedings of the Court."

The objections to the proceedings, as particularly set out in the pleas to the jurisdiction are: 1st, that there was no order passed by a justice of the peace requiring the accused to enter into a recognizance or give bond for his appearance at Court, and that he never entered into such recognizance or gave such bond, and no copy of any such recognizance or bond was made or retained by the justice; 2nd, that no justice ever took down and reduced to writing the testimony of the woman making

the complaint, together with the cross-examination of her by the accused or his attorney, and transmitted the same, together with the original papers to the Circuit Court; 3rd, that no justice of the peace immediately upon the passage of an order in and upon the premises transmitted the original papers and a transcript of the proceedings had before him to the Court; 4th, that no bond or recognizance required under the 12th Article of the Code was so taken or given, or immediately or ever, returned (a copy thereof being retained by him) to the clerk of the Court, and 5th, that no recognizance, bond, transcript of any proceedings, original papers, written accusation under oath, or testimony reduced to writing, together with the cross-examination, was ever transmitted or received or filed or docketed among the records of the Court.

The evidence shows that such papers as were issued or taken by the justice of the peace (the warrant, bond, testimony and cross-examination) were mailed by him, addressed to the clerk of the Circuit Court for Prince George's County, but were not received by the clerk and have never since been found. The appellant contends that the Circuit Court had no jurisdiction under Article 12 of the Code, in the absence of all such papers as are required to be taken by the justice of the peace, by the provisions of that article. As the uncontradicted testimony of the justice who acted in this case shows that some of the things directed to be done by him were not done, but that he did place in a mail box in front of the Post Office at Laurel where he, the woman and the accused lived, such papers as he took, duly addressed to the clerk, using his name and official title, we will consider (*a*) the effect of the papers, etc., not being received by the clerk, or Court, either before or after the indictment was found, and (*b*) the effect of the omissions and errors of the justice as to some of the proceedings.

(*a*) Assuming for the purposes of this part of the discussion that all papers, if any, which were essential to give the Court jurisdiction were taken and mailed by the justice to the clerk as above stated, but have been in some way lost.

there can be no question about the right of the State to prove
their contents, if that became for any reason necessary or
proper.   The Act of 1912 made radical changes in our
statute.   Under former statutes when the alleged father of
the child was taken before the justice the latter required him
to give security to indemnify the county from all charges
that might arise for the maintenance of such child, and upon
his failure to enter into security the justice committed him
to the custody of the sheriff of the county for the period of
twelve months.   If he felt aggrieved by the judgment of the
justice he had the right to enter into his personal recognizance
for his appearance at the next term of Court, but in order to
be released was compelled to give security for his appearance.
In *Cushwa* v. *State*, 20 Md. 277, it was held that in the
absence of the judgment of the justice and the recognizance
to appear "the Circuit Court was without jurisdiction, the
basis for the Court's proceeding is the judgment of the jus-
tice, and the recognizance of the party to appear, upon which
alone it is authorized to take cognizance of the matter." But
the Court then went on to give the reason why that was so,
saying: "The jurisdiction conferred on the Circuit Court by
the 5th section is not original, but in the nature of a review of
the judgment of the justice before whom alone the proceed-
ing can originate under the Code."   Great hardship was
sometimes imposed on accused persons who were unable to
give security, and it was not until the Act of 1894, Chapter
108, that the accused could get the Court to take cognizance
of his appeal without entering into a recognizance with
security.

Under the Act of 1912 the justice does not render any
judgment, and hence what was said in *Cushwa's case, supra,*
is not applicable, as the proceeding in Court is no longer "in
the nature of a review of the judgment of the justice."   The
proceeding before the justice is simply a preliminary exam-
ination for the purpose of holding the accused for Court, if
the evidence justifies it.   Under the former law action was
not taken, before the justice, before the birth of the child,

but now it may be taken when the woman is pregnant, although the father cannot be indicted until after the birth of the child. If the woman dies before she is delivered of the child or the child is not born alive, then there can be no indictment under this article, and there is in such case no judgment against the father.

It would therefore be remarkable if the accused could not be proceeded against because the papers were lost in their transmission to the Court—especially when we remember that even under the former statutes the proceedings before the justice formed no part of the record and it was not necessary to set them out in the indictment. *Norwood* v. *State,* 45 Md. 68. No possible use of any of the papers required by the present statute to be sent to the Court can be made at a trial under the indictment, unless it be the examination and cross-examination of the woman. Inasmuch as the statute does require certain documents, etc., to be sent to the Court by the justice, when they are lost the proper practice is to have copies of them made and filed, so the copies may be used, if it becomes necessary; but in passing it may be well to say that there is no exception in the record as to the method of proof of the lost papers or their contents, but the contention was that as the papers were not filed in Court, it had no jurisdiction. In 19 *Am. & Eng. Ency. of Law* (2nd Ed.), 556, it is said: "In case of the loss or destruction of a judicial record, or any part thereof, such record may be restored at the instance of the party affected. This power, which has long since been recognized, has frequently been exercised by the restoration of lost or destroyed warrants, summonses and other writs, pleadings, exhibits, bills of exceptions, bonds and recognizances," etc. Then on page 557 it is said that the record of a judgment and a lost or destroyed indictment can be restored. While it is true that a justice's Court is not a Court of record, there can be no reason why copies of proceedings taken before one under this article should not be permitted to be proved.

Indeed in some respects it is more important than permitting copies from courts of record, as it is well known that few justices of the peace have the protection for their papers that courts of record presumably have. In 5 *Cyc.* 654, having spoken of the complaint, examination of complainant, the warrant and decision in this class of cases, it is said: "The original papers are not indispensable in the higher Court, but the proceedings may be continued on certified copies of  same. A transcript of the proceedings has been held sufficient, though a copy of the complaint or warrant be omitted. While the recognizance for appearance of defendant should be transmitted, it has been held that if there has been a failure to exact such recognizance the appearance may be enforced by a *capias.*" In the notes are cited *Biggane* v. *Ross,* 126 Mass. 233; *Kennedy* v. *Shea,* 110 Mass. 152; *Ramo* v. *Wilson,* 24 Vt. 517; and it is said that a certified copy of the proceedings may be filed in the higher Court at any time before the trial begins, citing *Hawes* v. *Gustin,* 2 Allen, 402; *Packard* v. *Lawrence,* 15 Gray, 483; *Allen* v. *State,* 4 Blackf. 122; *Altschuler* v. *Algaza,* 16 Neb. 631. It is also said that an entry *nunc pro tunc* may be allowed by the Court. *Dineen* v. *Williams,* 138 Mass. 367. In another note on that page of *Cyc.* it is said: "The neglect of the justice to file a transcript, or even the fact that the papers are lost, does not render it obligatory upon the Court to grant a continuance. A new transcript may be substituted, and the testimony which was taken may be proved by parol," citing *Burt* v. *State,* 79 Ind. 359; *Hoff* v. *Fisher,* 26 Ohio St. 7.

We are aware of the fact that in most, if not all, of those cases the proceeding for bastardy was regarded as a civil, and not a criminal proceeding, but the cases were tried on the papers sent up by the justices, and we cite them to show how ready other courts have been to avoid a miscarriage of justice by substituting papers and records for those lost or destroyed. Under our present statute there can be no possible reason for not allowing that to be done, and on the other

hand there are many reasons why it should be allowed. We hold therefore that the absence of such papers as the statute requires to be sent to the Court, under the circumstances disclosed by this record, was not sufficient to require the Court to quash an indictment or refuse to take jurisdiction of the case. We do not overlook the word "thereupon," so much relied on by the appellant, in section 5, quoted above. It will be observed that the statute does not say that, when the papers are filed in, or received by, the Court, "the same proceedings shall be had," etc., although of course it was assumed that they would be received in due course after they were transmitted, and that was implied; but we are of the opinion that it was not intended by the Legislature to make the prosecution dependent upon the papers being received by the Court. There is no more reason why that should be so than the failure of a justice to transmit the bond or recognizance and other papers taken at some other preliminary examination, for as there is no longer a judgment by the justice and the proceeding in Court is not in the nature of a review of his action and the papers are manifestly required to be transmitted for the protection of the State, county and prosecutrix, and not for that of the accused, no valid reason can be assigned for holding that the Act of 1912 was intended by the Legislature to be of such a mandatory character as to result in depriving the Court of jurisdiction, if the papers were either lost, or executed in such a careless and defective way as justices too frequently do. Especially is this so when the object of the Act of 1912 was undoubtedly to get rid of technical difficulties which had often arisen under former statutes. As the county or city is interested, it was proper to require the justice to transmit the papers to the Court, so the matter could be inquired into by the Grand Jury.

(b) Much of what we have said applies to the second branch of this subject, but we will consider the effect of the failure of the justice to comply with the requirements of the Statute in such respects as the record discloses. No order in

writing was passed requiring the accused to give bond as provided for in section 3, but the justice did notify the accused that he must give bond and one was given by his father. The bond itself, if in proper form, would show that the justice had required it, and we can see no possible way by which the traverser was, or could be, injured because the order was not in writing. The evidence shows that the accused did not sign the bond. The Statute seems to contemplate having the accused execute the bond, and that is certainly the better practice, but the failure to do so cannot affect the jurisdiction of the Court. He may be unable to furnish security at all but would be entitled to be tried, if indicted, and hence it cannot be said that if a bond is improperly executed the Court would for that reason be without jurisdiction. Moreover while section 3 provides that the justice shall pass an order requiring the accused to give bond, with good and sufficient securities, section 7 seems to contemplate that a recognizance can be taken instead of a formal bond. A recognizance under some circumstances can be taken in the absence of the accused, *Schultze* v. *State,* 43 Md. 295, and be valid. But the bond is for the protection of the county, or the mother or other person in charge of the child, and an imperfect one can in no way injure the accused. Nor can the failure of the justice to keep a copy of the bond or recognizance injure him or affect the jurisdiction of the Court.

The evidence shows that the justice did take down and reduce to writing the testimony of the complainant and her cross-examination, which was conducted by the attorney of the accused. The absence of that is all that, so far as we can see, could possibly have injured the accused, but as we have already indicated that could have been proven by parol, and in point of fact the attorney for the traverser did call the justice to prove what she said. He could not therefore have been injured, if at all, more than he might have been if that testimony had been lost after it had been received by the clerk, and surely it could not be contended that a loss at that

time could have in any way affected the jurisdiction of the Court. But beyond that, the primary object in requiring the testimony to be taken down, signed and sworn to by the woman was, as disclosed by section 4 of the Statute, that the prosecution could have the benefit of her evidence in case of her death before the trial of the case. It is undoubtedly the duty of the justice to transmit all of the papers required by the Statute to be transmitted by him, and to retain a copy of the bond or recognizance, but there is nothing in the Act to indicate that the Circuit Court of a county or the Criminal Court of Baltimore City should be deprived of jurisdiction of the case by reason of his failure to do what is required of him, or because there is some irregularity in some of the papers or because they were afterwards lost. The bond is important, as it not only is intended to secure the appearance of the accused, but, if forfeited, the proceeds thereof can be applied from time to time to the maintenance and support of the child, but no valid reason can be given for holding that the Court should be ousted of its jurisdiction because it was irregularly executed.

It is not necessary to determine whether an indictment could be validly found without some proceeding being first taken before a justice of the peace. It is sufficient now to say that that would be an unwise and dangerous course to pursue in view of this statute, but as we have no doubt that under the circumstances of this case the Court had jurisdiction and the indictment was valid, we are of the opinion that the Court committed no error in overruling the motion to quash. It also follows from what we have said that there was no error in overruling the demurrers to the replications of the State. As under the facts of this case we have no doubt about the jurisdiction of the lower Court, we do not see how anything could have been accomplished by submitting to the jury the issues on the pleas to the jurisdiction of the Court. If such questions be submitted to a jury, it would be the duty of the Court to advise them as to the

opinion of the Court on them, for the jury could not be expected to know whether such matters as are alleged deprived the Court of jurisdiction, but in this case there were no such issues for the jury to pass on when the Court instructed the jury that their verdict should be "guilty" or "not guilty." After the Court ruled on the demurrers to the replications and issue was joined on these pleas and replications, the defendant plead "not guilty" and submitted his case to the jury. Testimony was then taken for the State and for the defendant on the question of his guilt or innocence.

Whatever may be the law elsewhere, it is too well settled in this State to admit of any doubt that a plea to the jurisdiction of the Court and a plea to the merits cannot be submitted to the jury at the same time. In *Tyler* v. *Murray,* 57 Md. 418, on page 438, it was said that "A plea to the merits and to the jurisdiction at one and the same time are so inconsistent, that a plea to the merits is a waiver of the plea to the jurisdiction" * * * citing *Sheppard* v. *Graves,* 14 Howard, 509. In *Reilly* v. *Dougherty,* 60 Md. 276, the Court held that the rule announced in *Tyler* v. *Murray* as applicable to common law Courts should prevail in Courts of special and limited jurisdiction and applied it to issues in the Orphans' Court. In *Cruzen* v. *McKaig,* 57 Md. 454, issue had been joined on two replications to pleas in abatement and after a demurrer to the third replicaation had been overruled the defendant filed two pleas in bar of the action. The Court said: "By these pleas all matter of abatement previously pleaded was effectually waived; for no principle in the system of special pleading is better settled than that you cannot plead together both matters in abatement and in bar; and that by pleading in bar, all previous pleas in abatement are waived and abandoned, and cannot be again resumed." In *Glenn, Trustee,* v. *Williams,* 60 Md. 93, it was again said: "Matters in abatement and matters in bar cannot be pleaded together; the pleas in bar supersede those in abatement" * * * citing *Step. on Pl.* 430, and *Cruzen* v. *McKaig;* see also 1 *Poe on Pl. and Pr.,* secs. 594 and 600.

So whatever may be said as to double pleading being permissible, there can be no doubt that in this State pleas to the jurisdiction and pleas in bar cannot be submitted to the jury at one and the same time. Without giving other reasons, such as were referred to in *Tyler* v. *Murray* and other cases, the utter inconsistency of submitting to a jury at the same time matters involving the denial of the jurisdiction of the Court to try the case, and the guilt or innocence of the accused must be apparent. Great injustice might be done a traverser, for if a jury thought he was guilty under the evidence before them they might not give proper consideration to the matters affecting the jurisdiction. Certainly in the absence of a statute properly regulating the procedure, if that be possible, it could not be safely done under our system.

It may be well to add that such cases as that of *Gambrill* v. *Schooley,* 95 Md. 260, show the practice in this State. There a jury was first empanelled to try the issue made on the plea to the jurisdiction, and as that trial resulted in a verdict for the plaintiff, there was a judgment of *respondeat ouster.* *After* that judgment the defendant filed the general issue plea, and the trial upon the merits proceeded before a second jury—in that case at a later term of Court. The trial on the merits resulting in favor of the plaintiff, on an appeal from the final judgment the rulings of the Court on the plea to the jurisdiction as well as those in the trial on the merits were open for review in this Court.

Section 10-A of Article 75, as enacted by Chapter 68 of the Acts of 1914, cited by appellant, has no application to this question. The law in reference to issues of fact arising upon any dilatory plea other than a plea to the jurisdiction as stated in 1 *Poe,* section 597, was a sufficient reason for the Act of 1914, but the question we have been considering is in no way affected by that Act. There was then no error in the instruction of the Court as to the form of the verdict.

The above questions were presented by the first, second and ninth bills of exception. Although rulings on demurrers

are not properly presented in that way, those in this case were in the second. The question asked the prosecuting witness and objected to by the State which was excluded as shown by the third bill of exceptions was unquestionably properly excluded. She was asked whether she did not say in a letter to the defendant that she had told her mother that she was pregnant as a result of intercourse with a party named in the question. The letter was not produced or its absence accounted for and the ruling of the Court was clearly correct. There can be no doubt about the ruling in the fourth. The question in the fifth does not seem to be material and there was no reversible error in the seventh or eighth.

The only remaining exception to be considered is the sixth. Although the fifth is somewhat connected with it, we do not regard the question there objected to as material. When the objection to that was sustained, the attorney for the appellant then said to Dr. Huntt: "I will try to approach it from the other side for a moment. Did she, in the conversation at this time, make to you a statement as to who was the cause of her pregnancy?" An objection to that by the State was sustained. Dr. Huntt had testified that he had been the physician of Nora Tilley, the prosecuting witness. He said that in the summer of 1913 she went to his office to consult him about going to a hospital. Communications made to medical men in their professional capacity were not at common law privileged, *Reynolds on Trial Evidence,* 262; 1 *Wharton's Cr. Ev.* (10th Ed.), 1059, and they have not been made so by statute in this State. The evidence could not therefore have been properly excluded on that ground.

The main difficulty is that no foundation was laid to impeach Nora Tilley as to a conversation with Dr. Huntt, if that was the object, and it could not have been admitted for any other purpose. She was asked whether she had not in her statement before the justice said that she had told Dr. Huntt that she was pregnant, and that the expected child was not the child of the traverser, "but belonged to somebody

away from Laurel." After she had answered that question, the attorney said: "I am not talking about what you said to Dr. Huntt. Get this marked clearly in your mind. I am asking you what you testified to before Mr. Williamson. Didn't you testify before Mr. Williamson, under oath, that you had told Dr. Huntt that this was not Ellery O'Brien's child that was expected, but was the child of somebody away from Laurel?" She answered that question in the negative, but she was not asked what she told Dr. Huntt. Mr. Williamson, the justice of the peace, and another witness testified that she did make such statement, and hence the traverser got the benefit of that. If the question asked Dr. Huntt was intended to lead up to testimony by him that she had said that some one other than the traverser was the father of the child, not only the well-established rule of practice in this State, but simple justice to her and to the State required that she should first be given an opportunity to explain what she said and why she said it, but that was not only not done, but she was expressly told that she was not asked about what she told Dr. Huntt, but about what she said to the justice that she had told him. We are therefore of opinion that the ruling of the Court was correct and the question was not permissible, in the absence of such foundation as is required by our decisions.

It follows that the judgment must be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*