## WATSON KELLY v. STATE OF MARYLAND.

*Bastardy Proceeding — Preliminary Complaint — Evidence — Admissions—By Parents of Accused—Declarations by Mother—Suspension of Sentence.*

Since the passage of Acts 1912, ch. 163, the justice of the peace has no jurisdiction to hear and determine a charge of bastardy against the putative father, but conducts simply a preliminary examination for the purpose of holding the accused for court if the evidence justifies it.                    p. 91

The requirement of Acts 1912, ch. 163, that the mother of the bastard child shall accuse the alleged father in writing under oath before a justice of the peace, is directory merely, and the fact that the accusation is made by another, or in a different manner, does not affect the jurisdiction of the court.
pp. 91-93

The grandmother of the bastard child, the mother's mother, was properly allowed to state that her purpose in going with her daughter to the home of accused's parents, upon discovering the daughter's pregnancy, was to find out whether the latter had told her the truth as to the paternity of the child.        p. 93

The refusal to strike out the answer of a witness was not reversible error when part of such answer was admissible, and

this was not separated by the motion from the objectionable part.                                                                p. 94

Questions asked on cross-examination, not relating to anything testified to by the witness in chief, are not permissible.

p. 94

In a bastardy proceeding, a warrant charging the accused with the non-support of the child was properly rejected, as involving a collateral matter.                                    p. 94

In a bastardy proceeding, refusal to allow defendant to state what the child's mother had said in an interview with him and his mother, as to the paternity of the child, *held* not reversible error, the proposed testimony being offered to impeach alleged testimony which was non-existent, the nature of the proposed testimony not appearing, and defendant's mother later testifying as to what the child's mother had said.      p. 95

The accused being but seventeen years old, and it appearing that he relied on his parents for guidance and made them his confidants, and the State's evidence being that they had heard his admission of guilt, statements by his parents, made in his presence and with his acquiescence, involving the assumption by them of responsibility in the matter, were admissible to contradict the testimony of the accused and his parents that he did not confess his guilt in their presence.               pp. 95-97

Nor was there any prejudicial error in the admission of evidence as to gifts made by them to help the child's mother at the time of its birth, though these were made out of accused's presence, they being but details in the performance of what had been promised in the son's presence.               pp. 95-97

The mother of the child, fifteen years of age, who died after its birth, having been silent when the traverser was charged by her parents with the child's paternity, declarations subsequently made by her in consistency with her acquiescence in the charge, were admissible, in the court's discretion, to rebut testimony of the traverser's mother that the child's mother had, immediately after the charge was made by the latter's parents, gone into another room with accused and his mother, and stated that the traverser was not the father.               pp. 97, 98

While the jurors in criminal cases are the judges of both the law and the facts, counsel cannot argue to the jury that the

court's construction of the law on a preceding motion to quash and a plea to the indictment was erroneous, in order to secure through the jury a reversal or evasion of what the court had decided was the law as to its jurisdiction over the crime charged, the question of jurisdiction being for the court.          p. 98

The penalty named in the bastardy statute should be imposed in the form prescribed by the statute, and then the sentence suspended, if it be adjudged advisable under the circumstances.
p. 100

In a bastardy case, the docket entries in the record containing an item, "sentence suspended, paroled to pay ten dollars monthly, etc.; order filed," *held* that, it being a criminal case, and enough appearing for the presentation of the questions argued, the record would be treated as properly setting forth the order of the court.                                  p. 100

Code, art. 27, sec. 577, authorizing the court, in suspending sentence, to make orders and impose terms as to costs, recognizance for appearance, and matters relating to the residence or conduct of the convict, and as to detention and custody in the case of a minor, does not empower the court, in suspending sentence, to impose the payment of a monthly fine or penalty.
p. 100

The unauthorized imposition of a fine or penalty, in connection with a purported suspension of sentence, is an imposition of a sentence and a judgment, from which an appeal lies.
p. 100

Though no prejudicial error is disclosed justifying a reversal, the record may be remitted under Code, art. 5, sec. 87, in order that, on account of error in the judgment or sentence, a proper judgment upon the conviction may be announced.          p. 101

*Decided June 11th, 1926.*

Appeal from the Criminal Court of Baltimore City (Duffy, J.).

Bastardy proceeding against Watson Kelly. From a judgment of conviction the traverser appeals. Reversed.

The cause was argued before Bond, C. J., Urner, Offutt, Digges, Parke, and Walsh, JJ.

*Fleet W. Cox* and *Benjamin Chambers,* with whom was *Daniel B. Chambers* on the brief, for the appellant.

*Herbert Levy, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General, Herbert R. O'Conor, State's Attorney for Baltimore City,* and *Hilary W. Gans, Assistant State's Attorney,* on the brief, for the State.

PARKE, J., delivered the opinion of the Court.

This is an appeal taken in a bastardy proceedings in which the traverser reserved thirty-seven exceptions, and in which the State has made a motion to dismiss the appeal on the ground that there was no final judgment on the conviction.

1. The appellant first interposed a motion to quash the indictment, and then a plea to the jurisdiction, which were held to be insufficient. Both the motion and the plea rested on the common point that the trial court was without jurisdiction because the indictment was found against the traverser without the mother of the bastard having first accused the appellant in writing under oath of being the father before a justice of the peace having criminal jurisdiction. The rulings on the motion and on the demurrer are set forth in the first two bills of exceptions, although no bill of exception should have been given to the ruling on the demurrer.

The mother of the bastard died a few days after the birth of the child, and before she had made any information against the traverser. After her death, her mother appeared before a justice of the peace with criminal jurisdiction, and accused the appellant in writing under oath of being the father of her daughter's living bastard child. A warrant was issued for the traverser's arrest and he was brought before the justice of the peace and the testimony of the mother making the complaint was taken down and reduced to writing, there being no cross examination; and then signed and sworn to by the prosecuting witness. The accused thereupon made a motion to quash the warrant and proceedings because there was no writing under oath by the mother of the bastard child accusing the appellant, but the motion was denied by the magistrate, who held the appellant for the action of the grand jury, which later indicted him for the bastardy charged.

With this preliminary statement we shall proceed to the discussion of the narrow but important question raised for our decision. Before the passage of the Act of 1912, ch. 163, now codified in article 12 of the Code, the justice of the peace was the court of original jurisdiction in all prosecutions for bastardy, and the circuit court or the Criminal Court of Baltimore City had no other jurisdiction over the crime except as an appellate tribunal. *Cushwa v. State,* 20 Md. 281; *State v. Chaney,* 93 Md. 71, 73; *O'Brien v. State,* 126 Md. 270, 276. Since the passage of the Act of 1912, the justice of the peace has no jurisdiction to hear and determine a charge of bastardy against the putative father, but conducts simply a preliminary examination for the purpose of holding the accused for court if the evidence justifies it. *O'Brien v. State,* 126 Md. 270, 276; *Hamillon v. State,* 127 Md. 312, 314. It may well be that the justice of the peace has no jurisdiction to issue a writ for the arrest of the alleged father until the woman who has been delivered of or who is pregnant with a bastard child shall in writing under oath before him accuse the party charged of being the father. *Supra.* While this may be conceded *ex gratia argumenti,* it does not follow that the court is without jurisdiction if this accusation be not made before the justice by the woman and in the manner prescribed by the statute. Section 2 of article 12 of Code. This Court has held in *O'Brien v. State,* 126 Md. 270, that the loss in transmission by mail of the original papers (*i. e.,* the warrant, bond, testimony and cross-examination), taken by the justice of the peace in a bastardy proceedings begun by the mother did not oust the jurisdiction of the circuit court, which should have received and kept them in custody. Sections 4, 5, 7 of article 12. And, on principle, there does not appear to be any sound reason for the contention that the mere non-compliance with what this Court has accurately characterized as "simply a preliminary examination for the purpose of holding the accused for court, if the evidence justifies it," would deprive the court of its jurisdiction to indict. It is quite true that in *O'Brien v.*

*State, supra,* this Court indulged in the *dictum* that, "it is not necessary to determine whether an indictment could be validly found without some proceeding being first taken before a justice of the peace. It is sufficient now to say that that would be an unwise and dangerous course to pursue in view of this statute." At page 281. However, as was pointed out in the course of the same opinion: "No possible use of any of the papers required by the present statute to be sent to the court can be made at a trial under the indictment, unless it be the examination and cross-examination of the woman. At page 277. And, again, "We are of the opinion that it was not intended by the Legislature to make the prosecution dependent upon the papers being received by the court. There is no more reason why that should be so than the failure of a justice to transmit the bond or recognizance and other papers taken at some other preliminary examination, for as there is no longer a judgment by the justice and the proceeding in court is not in the nature of a review of his action and the papers are manifestly required to be transmitted for the protection of the State, county and prosecutrix, and not for that of the accused, no valid reason can be assigned for holding that the Act of 1912 was intended by the Legislature to be of such a mandatory character as to result in depriving the court of jurisdiction, if the papers were either lost, or executed in such a careless and defective way as justices too frequently do. Especially is this so when the object of the Act of 1912 was undoubtedly to get rid of technical difficulties which had often arisen under former statutes." At page 279. These quotations indicate that the *ratio decidendi* of the decision supports the view that the jurisdiction of the trial court is not to be determined by a narrow construction of the statute, but upon a beneficial reading of its provisions so as to obtain the object of the enactment. To hold the provision relied upon by the appellant is not mandatory but directory does not offend the letter or the spirit of the enactment, but secures the prosecution of those committing the crime of bastardy under all circumstances of

guilt, which must have been the legislative intent. A different construction would make the premature death of the mother, or her physical or mental incapacity to take the oath before a justice of the peace, the way of escape for the offender. The primary intent and purpose of the Act of 1912 was to confer original jurisdiction upon the circuit courts and the Criminal Court of Baltimore City in the prosecution of the father in all bastardy cases, and that jurisdiction was to be enforced and administered in these courts by the same proceedings as are had in other criminal cases. The proceedings before the magistrate begun by the accusing mother were a preliminary procedural method of bringing the crime to the attention of the court and of securing the mother's evidence against the accused, if she should die before the time of the trial. But this method of bringing the alleged crime before the court for prosecution was not exclusive, and all the other methods of submitting the crime charged to the grand jury for indictment remained available. The position of the learned judge below on the motion to quash and on the demurrer to the plea was in accord with these views; and the appellant's first two assignments of error must fail.

2. The next thirty-four exceptions are to the rulings on the evidence and for convenience they have been separated into groups.

I. Annie Bader, the mother, testified that she discovered in July, 1924, that her daughter, Eleanore Bader, was pregnant with the child which was born on February 25th, 1925. Her daughter died seven days after the birth of the child. When she learned of her daughter's condition, the mother took her to the home of the traverser's parents and there they saw the accused and his mother and father. The witness was permitted to say that her purpose in making this visit was to find out if her daughter had told her the truth in respect to the paternity of the expected child, and this ruling is the ground of the third exception, and we can see no possible objection to this statement of so natural and obvious a pur-

pose. In this interview, when the five parties named were in the room together, and when the traverser was first charged by the mother with the paternity of her daughter's child, and where, according to the mother's testimony, the accused admitted his guilt, the whole answer of the witness, which contained the admission of the traverser, and some natural comment of the father on his son's statement, and his declaration that he and his wife were willing to do anything in their power, was asked to be stricken out, and the court's action in refusing is presented by the fourth bill of exception. The answer was responsive, and whatever of the conversation that was objectionable was not separated by the motion from the admission, and we find no reversible error. The testimony objected to in the fifth, sixth, seventh and twenty-eighth bills of exceptions was elsewhere given in evidence, without objection, by the witness testifying at the time of each ruling and, therefore, these rulings are not reversible error.

II. The questions asked the witness, Miss Hilberg, under the fifteenth to seventeenth bills of exceptions, were not permissible on cross-examination, as they did not relate to anything testified to by the witness in chief. The effort to introduce a warrant charging Watson Kelly with the non-support of the infant child, as set out in the twenty-third exception, was a collateral matter, and the trial court was right in rejecting it. The questions asked the witnesses under the twenty-fourth, twenty-fifth and twenty-sixth exceptions were on cross-examination, and no injury resulted from their answers, even if the questions had been objectionable. Nothing prejudicial to the traverser was introduced or excluded by the rulings on the twenty-seventh, twenty-ninth, thirty-first, thirty-second, thirty-third, thirty-fourth and thirty-sixth exceptions, and the evidence offered on the thirtieth was to contradict a material statement of the accused and was admissible in rebuttal.

III. While the traverser was testifying, he stated that he and his mother and Miss Bader went into the kitchen, and he was then asked by his mother, in the presence of Miss Bader, if he were the father of the child, and he replied that

he was not. And counsel for the traverser then asked what the young girl had said, and stated the inquiry was for the purpose of impeaching the testimony of Mrs. Bader that her daughter had informed her the traverser was guilty of the offence, but we do not find any testimony by Mrs. Bader relating what her daughter had told her, and as there was no indication of what the nature of the proposed testimony of the witness would be, this court cannot say the exclusion of the answer in the twentieth, twenty-first and twenty-second exceptions was reversible error, especially in view of the fact that later on the mother narrated at length what she asserted was said by the girl.

IV. Mrs. Bader swore that the night after her daughter's death the traverser and his father were at her home, and the traverser's father told the mother in the son's presence that he was willing to do all in his power to help them; and "that it could not have hurt him any worse if it was his own daughter that was dead." Miss Hilberg's testimony was that in the presence of his parents the traverser admitted to her his criminal intimacy with the girl extending into May, 1924, and that the traverser and his parents rejected the suggestion of marriage, but the parents agreed, in the presence of the son, to pay a dollar a week for the support of the child through the Henry Watson Children's Aid Society. The father of the dead girl, also, testified that the traverser and his father came to the girl's home and there the father of the accused said, in his son's presence, that he thought his son was too young to marry, but that he was willing to do anything in his power to help in the trouble, and that he would never see the witness lose as long as the child lived, and that he would pay the costs of getting a doctor.

The admission of this testimony is the basis for the twelfth, thirteenth, fourteenth, eighteenth and nineteenth exceptions.

V. The eighth, ninth, tenth and eleventh exceptions were taken to the testimony of Mrs. Bader that two days after the baby was born the father and mother of the traverser brought the baby a cradle and some clothes; and that the father gave her twenty-five dollars to pay the doctor, and later sent

her by the traverser and his brother five dollars in an envelope because she had telephoned the father that the doctor's bill was forty dollars.

The last two preceding groups of exceptions embrace acts and declarations of the father and mother of the traverser; and the difference between the two classifications is that the first concerns those things said and done in the sight and hearing of the traverser, while the second, with one exception, relates to what was done out of his presence. Under the special circumstances of the case, the testimony was admissible against the traverser. The girl was but fifteen years of age and the accused was about seventeen years old; and the record is clear that he relied upon his parents for direction and guidance and made them his confidants, and they acted in his behalf. They were with their son when he was confronted with the girl and accused of the paternity of the unborn child, and they heard his reply, which was, according to the proof of the State, an admission of his guilt. The things afterwards said and done by his parents, with his knowledge and acquiescence in the first of the last two preceding groups of exceptions, and without this knowledge and acquiescence, except as to the payment of the additional five dollars, in the second of these groups, would not naturally have been said and done without the knowledge on their part of the admission by their son of his guilt. And just as the deeds and declarations set forth in these exceptions are incompatible with any other theory than the confession by their son in their presence of his culpability, so do they impeach the credibility of the denial severally made by the son, his father, and his mother that the son had confessed his wrongdoing in their presence. An innocent young man would not have acquiesced, nor would parents to whom he had asserted and maintained this innocence, have indulged in these acts and declarations which savored of an acknowledged guilty paternity. The traverser was actually present at all the occurrences admitted in evidence in the last two groups, except in the gift of the cradle, the clothes and the twenty-five dollars. But these exceptions are but details in the performance of what was

promised in the son's presence, and so their admission was not prejudicial, if erroneous. All these other things done and said in the presence and hearing of the accused demanded a protest or denial from him, as the clear, reasonable inference was that these things were said and done solely on the assumption of his guilt having been assumed by his parents and thereby their acts and promises, with his accompanying silence or participation, became a vicarious admission by him of the truth of the charge. The maxim *qui tacet consentire videtur* here finds the conditions for its application. See 2 *Wigmore on Evidence* (2nd ed.), secs. 1071-1072; *Leister v. State,* 136 Md. 518, 522, 523; *Jones v. State,* 132 Md. 142, 145.

VI. The State did not attempt to introduce any declaration by the dead girl of the paternity of the child, but the traverser offered the evidence of his mother that in September, 1924, in reply to her inquiry, the young girl said the traverser was not the father of her child, and had never had intercourse with her. This admission, if made and if believed by the jury to be true, was an end of the State's case. The alleged admission was made under these circumstances. The young girl was present, but silent when her parents, accused the traverser, and he, according to the State's witnesses, admitted his guilt; but later she went alone into another room with the witness and the traverser, and there made, upon inquiry, the declaration testified to by the mother. This impeachment of the verity of the prior conduct of the child and hence of the State's case through the unsworn statement of the dead girl was met by the State introducing in rebuttal other unsworn statements made by the girl, during her pregnancy, that the traverser was the father. To the offering in evidence of one of these declarations, made in November, 1924, to an intimate friend, the thirty-fifth exception was taken.

The mother of the bastard is commonly paid the penalty imposed under the statute for the support of the child, and her declaration, under the circumstances, may be said to be an admission against pecuniary interest, and, therefore, not-

withstanding its having been made without oath, is of some higher evidential value than her later unsworn self-serving statement given in rebuttal, although the latter was consistent with her presence to unite, although silently, in the accusation made of the traverser. And it is by virtue of this consistency of her later declarations that the ruling may be defended. As pointed out in *Wigmore on Evidence,* (2nd ed.), sec. 1126, p. 643, the jury had to determine whether they would believe the traverser's mother, who testified the girl uttered the contradictory statement, before the jurors could conclude that the girl's presence and conduct during the scene when the traverser was accused were in furtherance of a false and deceitful scheme. If her consistency on another occasion, when there was nothing to induce a lie, could help the jury to a finding on this vital issue, it is relevant. *Bloomer v. State,* 48 Md. 521, 537; *Cross v. State,* 118 Md. 660, 669, 670. In view of the immaturity of the complainant and the circumstances under which the alleged contradiction was elicited, the proof of her otherwise consistency of statement has, on the facts of this record, a probative force and relevancy in rebuttal, which would not warrant holding that the ruling complained of "was both manifestly wrong and substantially injurious" and an abuse of the sound discretion of the court in the control of testimony in rebuttal. *Kaefer v. State,* 143 Md. 151, 159, 160; *Snowden v. State,* 133 Md. 636; *Jones v. State,* 132 Md. 148.

3. During the argument to the jury counsel for the defense was about to read to the jury from Kilty's Laws of Maryland, vol. 1, p. 1781, ch. XIII, the Act of 1781, ch. 13, entitled "An Act Directing the Proceedings Against Persons Guilty of Fornication," when he was stopped by the court, whose action constitutes the thirty-seventh bill of exceptions. While the jurors in criminal cases in Maryland are the judges of both the law and the facts, counsel are not permitted to argue to the jury that the court's construction of the law on a preceding motion to quash and a plea to the indictment was erroneous, in order to secure through the jury a reversal or evasion of what the court had duly decided

was the law with respect to its jurisdiction over the crime charged. The preliminary question of jurisdiction raised here by the motion and demurrer was for the trial court. The right of the court to try a cause is wholly distinct from the law and facts necessary to the commission of a crime. *O'Brien v. State,* 126 Md. 283, 285.

4. By section 60 of article III of the Constitution of Maryland power is granted to the General Assembly of Maryland to provide by suitable general enactment for the suspension of sentence by the court in criminal cases; and this power was exercised by the passage of the following general law, as codified in section 577 of article 27 of the Code:

> "The courts may suspend sentence generally or for a definite time, and may make such orders and impose such terms as to costs, recognizance for appearance, or matters relating to the residence or conduct of the convict as may be deemed proper; and if the convict is a minor, the courts may also make such orders as to his detention in any care or custody as may be deemed proper."

The party was convicted of bastardy under article 12 of the Code, which provides that upon the accused being found guilty

> "the court shall immediately order such person to give bond to the State of Maryland in a penalty not exceeding $500, with good and sufficient securities, conditioned to pay for the maintenance and support of said child, to the mother, or to the person having said child in custody, or to the county or to the City of Baltimore, as the case may be, if said child be a public charge, until said child reaches the age of fourteen years, or during the life of such child if said child should die before reaching the age of fourteen years, such sum, not exceeding $15 per month, as the court shall by order direct, due regard being had to the circumstances of such accused person, and further to pay the whole or such part of the expenses incurred by the said

mother during her confinement as the court may direct; and to pay the reasonable funeral expenses of said child if he or she shall die under the age of fourteen years, and in default of such bond he shall be committed to the jail or the House of Correction until said bond be given, but not exceeding two years."

It is better practice for the court to impose this penalty in the form prescribed by the statute, and then, if it be adjudged advisable under the circumstances of a particular case, to suspend the sentence. In the appeal before us the order of the trial court is not set forth in the record, but this appears from the docket entries: "Sentence suspended, paroled to pay $10 monthly, etc.; order filed." It is not to be understood that the omission of the order of the court is sanctioned by our entertaining the questions raised on this appeal, nor that our action is to be taken as a precedent; but, as this is an appeal in a criminal case and enough is indicated for the presentation of the question argued, the record will be be treated as properly setting forth the order of the lower court. See *Allen v. State,* 128 Md. 265, 267.

From the docket entries it is manifest that the sentence was suspended generally, and that the infliction of the penalty of paying the sum of "ten dollars monthly, etc.," was beyond the jurisdiction of the court, whose powers, in the suspension of sentence, were explicitly limited to costs, recognizance for appearance, and matters relating to the residence or conduct of the convict, and to detention or custody, if the guilty party be a minor. By "conduct" is to be understood the personal behavior or deportment of the convict, and consequently does not embrace the payment of a monthly fine or penalty. Hence the imposition of the fine or penalty of ten dollars monthly was not a suspension of sentence within the meaning of the law, but the imposition of a sentence and a judgment from which an appeal lies. See *Pritchett v. State,* 140 Md. 310, 315, 316.

In the case of *Symington v. State,* 133 Md. 452, the action of the lower court in suspending sentence and in com-

mitting the convicted minors to the custody of their respective fathers was in strict compliance with the express statutory discretion reposed in the court, and the question here presented was not before the court.

It may be observed that the reasoning of the Court in *Pritchett v. State,* 140 Md. 310, would indicate a qualification of *Symington v. State, supra.* In the later case, the traverser was convicted of wife desertion or non-support and, instead of being sentenced to pay a fine or to be imprisoned, or both, the court imposed the alternative or additional penalty of passing an order requiring the convict to pay weekly to his wife a certain sum for the space of one year upon his entering into a recognizance in a prescribed amount. The statute prescribed that should the convicted husband violate the terms of this order during the period of one year, the court might forthwith proceed to sentence him under the original conviction. This Court held the order a final judgment, and, therefore, appealable, on the ground that no other punishment could be imposed upon the husband until he failed to comply with the terms of the order. And so, in the case at bar, the lower court could not impose any other penalty upon the appellant so long as he continued to fulfil the conditions of the suspension.

The traverser's case was completely before the jury, and a careful scrutiny and weighing of the errors assigned on this appeal do not disclose any prejudicial error justifying a reversal, but, for error in the judgment or sentence of the trial court, the record will be remitted under the provisions of section 87 of article 5 of the Code to the court below, in order that a proper judgment upon the conviction may be pronounced. *Goeller v. State,* 119 Md. 68; *Cochran v. State,* 119 Md. 557.

> *Judgment reversed, with costs to the appellant on this appeal, and the case remanded for the entry of a proper judgment as provided in section 87 of article 5 of the Code of Public General Laws.*