NEAL *et al. vs.* THE STATE OF GEORGIA.

1. For one of the jurors to retire with leave of the court and guarded by a bailiff, to attend a call of nature, his fellows remaining in the box, and he being absent no longer than necessary, is not an illegal or irregular separation of the jury engaged in the trial of a capital felony.
2. When the prisoner's counsel and the presiding judge differ as to what was stated or omitted in charging the jury, the understanding and recollection of the judge must govern in the supreme court.
3. The verdict was warranted by the evidence.

Criminal law. Jury. Practice in the Superior Court. Practice in the Supreme Court. New trial. Before Judge FLEMING. Bryan Superior Court. April Term, 1879.

Neal and Jackson were placed upon trial for the murder of one Houston, alleged to have been committed on February 2, 1879. They pleaded not guilty. The evidence presented, in substance, the following facts:

The defendants, deceased and other negroes, were at the store of Miller, Brady & Co., in Bryan county, on the night of February 1st, 1879. Neal was the nephew of Houston. One Snyder lost some money in the store, and deceased used language tending to impute the theft to Neal. This called forth angry language from Neal, and a slight altercation ensued, which was quickly settled. After the store was closed, Neal fired off two barrels of his pistol in close proximity to deceased, but with no intention of hitting him, but with the apparent purpose of frightening him. Deceased struck at Neal with his gun, and broke the barrel off. As the parties went away from the store Neal was heard to say to deceased " G—d d d—n you, I will kill you to night," to which, one witness testified, deceased replied, " No, I have done nothing for you to kill me." Jackson was heard to say " he could whip all of these men, he had killed one man and would kill another." The defendants, deceased and a man named Bunion, were left together on the road, the other negroes going off to their various homes, but some of them heard two pistol shots after the separation, the sound coming from the direction of the spot where the body of the deceased was subsequently found.

Bunion testified, in brief, as follows : Going on in the road, Neal said to deceased, " do you say I stole Snyder's money ?" Deceased replied, "yes." Neal then shot him in the head. " He shot four times, twice at the store and three times on the road. Jackson damned at deceased. They did not see me." Deceased had basket on his arm. Jackson took the gun and knocked deceased on the head. They both beat him until he was dead, and then went off. Witness was hid in the bushes. Neal fired five times.

The body of deceased was discovered at the point indicated by Bunion. He had been shot and badly beaten. There were evidences of a scuffle all around the place.

When about to be arrested Neal drew a pistol, and Jackson started to run. Blood was on Neal's shirt and five of the six barrels of his pistol had been discharged.

The jury found the defendants guilty.    They moved for a new trial upon the following grounds, to-wit:

1.  Because during the argument of defendants' counsel, the court permitted one of the jurors to leave the court-house without any other juror trying the case being with him.

2.  Alleged error in charging the jury, but not certified by the presiding judge.

3.  Because the verdict was contrary to law, evidence, and the charge of the court.

In reference to the first ground it was shown that the juror, by permission of the court, left the other members of the panel, in charge of a bailiff, for the purpose of responding to a call of nature ; that he spoke to no one during his absence, the bailiff being all the time in close proximity to him ; that the bailiff only spoke to him to caution him against speaking to any one.

The motion was overruled, and defendant excepted.

W. W. FRASER ; J. A. BRANNEN, for plaintiff in error.

A. B. SMITH, solicitor-general, for the state.

BLECKLEY, Justice.

1.  In *Monroe vs. The State,* 5 *Ga.,* 86 (10), it was laid down, and the rule has been followed in many subsequent cases, that where there has been an improper separation of the jury during the trial. the prisoner, if found guilty, is entitled to the benefit of the presumption that the irregularity was hurtful to him, the *onus* being upon the state to show, beyond a reasonable doubt, that it did him no injury. But must we therefore hold that a like presumption arises out of a proper separation—proper in time, manner and circumstances ?    Surely not.    And what can be more fit than for the court to send out a juror, attended by a bailiff, when he is under a stress of nature which civilized man regards as a summons to retire ?    A comparison of the various possible methods of meeting and dealing with such

an exigency had better be left to silent meditation than discussed here with needless realism. It is enough if those who may become interested in the subject will form a mental picture of the situation, and contemplate it for themselves. It is inferable from the record that the absence of the juror was not for a longer time than was necessary, and he was under the immediate watch and guard of the bailiff all the while. The facts are altogether unlike those of any of the cases cited by the counsel for the plaintiffs in error, the citations being 10 *Ga.*, 512 (10); 41 *Ib.*, 527 (2); 45 *Ib.*, 225 (8); 47 *Ib.*, 598 (5), and 56 *Ib.*, 653. Compare 14 *Ga.*, 8 (4). The separation discussed in these authorities is improper separation, not a retirement rendered necessary by habits of decency, expressly authorized by the court, and guarded by a sworn officer.

·2. The record shows a difference of understanding or recollection between the counsel and the presiding judge, as to the terms of the court's charge to the jury on the subject of circumstantial evidence. Upon such a question the judge is, of course, the better authority in this court.

3. The sufficiency of the evidence to uphold a conviction depends in a great degree upon the credibility of the witness, Bunion. On the facts in the record we cannot hold, as matter of law, that the jury had no right to believe him. We feel that there is no alternative but to let their finding prevail.

Judgment affirmed.