## JOHN KENNARD *v.* STATE OF MARYLAND
[No. 11, January Term, 1940.]

550

*Decided January 25th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*William H. Harlan,* submitting on brief, for the appellant.

*Robert E. Clapp, Jr., Assistant Attorney General,* with whom were *William C. Walsh, Attorney General,* and *D. Paul McNabb, States Attorney for Harford County,* on the brief, for the State.

OFFUTT, J., delivered the opinion of the Court.

John Kennard was presented, indicted, tried and convicted of bastardy in the Circuit Court for Harford County. From the judgment on that verdict he took this appeal. The proceeding originated in a presentment

by the grand jury, and the defendant at the trial moved to quash the indictment in the ground that there had been no preliminary proceedings before a justice of the peace under the provisions of Code, art. 12. But where proceedings involving a charge of bastardy are not begun until after the birth of the child, they may be begun either by the accusation of the mother before a justice of the peace, or by the accusation of a grand jury. *Kelly v. State,* 151 Md. 87, 91, 133 A. 899; Code, art. 12, sec. 1, Acts 1939, ch. 182 sec. 4A. So the motion to quash was properly overruled.

The case was tried before a jury. At the conclusion of the trial a bailiff was sworn, the jury was committed to his care, the jurors retired to consider their verdict, and the court took a recess for one hour. While the jurors were deliberating the court "sent word" to them by the bailiff that when they reached a verdict they "could separate and get their dinners" and then come back and deliver the verdict. They agreed upon a verdict, separated, and when the court reconvened returned to the jury box and announced that they were ready to return a verdict. Counsel for the defendant, who then for the first time learned that they had separated, objected to "taking the verdict" for these reasons:

"1. Because the jury were allowed to separate and mingle with the general community, without being in the custody of the Bailiff, before they had rendered their verdict.

"2. Because the jury having been allowed to separate and mingle with the general community without being in the custody of the Bailiff, the Court had no power to bring them again together to take a verdict."

The court, notwithstanding the separation and the objection of counsel, directed the clerk to take and record the verdict, and the jury thereupon returned a verdict of guilty.

A motion for a new trial was filed and overruled, and the defendant then moved to arrest the judgment on the grounds that:

"1. Because there is no proper verdict in the case.

"2. Because there is no verdict in the case.

"3. Because the jury were allowed to separate and mingle with the general community without being in the custody of the Bailiff, before they entered their verdict.

"4. Because the jury having been allowed to separate and mingle with the general community, without being in the custody of the Bailiff, the Court had no power again to bring them together to take a verdict.

"5. Because after the Bailiff had been sworn and the jury taken by him to their room to consider their verdict the Judge sent word by the Bailiff to the jury that when they had reached a verdict they could separate and get their dinners and they could come back to the jury box when they reconvened and give their verdict."

That motion was also overruled, and sentence imposed and judgment entered upon the verdict.

The remaining question presented by the appeal is whether upon those facts the verdict of the jury was good in law.

Undoubtedly the better and the sounder practice, and one almost uniformly observed in this state in civil as well as in criminal cases, is to require a jury to whom a case has been committed to remain together in the custody of a judicial officer in some place appointed by the court until they are brought therefrom before the court to return their verdict, unless prior to their separation they have been given leave to seal a verdict, or have been discharged.

Nevertheless the mere separation of the jury after the case has been given to them and before verdict does not, in misdemeanor cases, necessarily invalidate their verdict.

Technically this is not a criminal proceeding but one which nevertheless has many of the incidents and elements of such a proceeding, and for the purposes of the question the offense may be treated as though it were a misdemeanor, for it certainly should not be classified with graver offences, such as felonies.

At common law the separation of the jury in criminal cases after they had retired to consider their verdict and before they had reported or sealed it would have vitiated any verdict thereafter reported (64 *C. J.* 1010, 16 *C. J.* 1075, 16 *R. C. L. "Jury,"* sec. 116), and it has been said that until they had reached and reported a verdict they were "prisoners of the court." *Ibid.* The purpose of the rule was first to prevent contamination of the jury by extraneous communications and improper influences, and second to coerce a verdict by withholding from the jurors their accustomed comforts and conveniences with the idea of making their confinement so unpleasant and irksome that they would be willing to end it as soon as possible. *Ibid.* Accordingly it has been said: "The jury must be kept together without meat, drink, fire, or candle, till they are agreed. 24 E. 3.75, (b) ; *Co. Lit.* 227. b. If they agree not before the departure of the justices of gaol-delivery into another county, the sheriff must send them along in carts, and the judge may take and record their verdict in a foreign county; *quaere,* whether in such cases the session may be adjourned before the verdict taken. 19 Assiz. 6. per Scot. 41 Assiz. 11." 2 *Hale's Pleas of the Crown,* 296. But in modern times the rigor of that rule has been relaxed, certainly in the trial of misdemeanors (2 *Wharton, Crim. Proc.* sec. 1764; 2 *Bishop, Crim. Proc.* sec. 996; *McKinney v. People,* 2 Gilman (Ill.), 540, 43 Am. Dec. 65, 80 note), and the rule approved by what seems to be the weight of authority is that in cases of misdemeanor such a separation will not vitiate the verdict unless it appears that the defendant was prejudiced thereby. *Ibid.*

In *Rex v. Kinnear,* 2 B. & Ald. 460, 106 Eng. Rep. 434, it was held that the dispersion of a jury after the close of the Crown's case in a trial of an indictment for conspiracy did not prevent the return of a valid verdict, but in *Rex v. Ketteridge,* [1915] 1 K. B. 467, where the defendant was indicted for rape, it was held that the separation of the jury after the judge had summed up was an irregularity which vitiated a verdict later returned.

And it is undeniable that the rule that in criminal cases the jury should not be permitted to separate after the case has been submitted to them has been applied more rigorously in the trial of felonies than of misdemeanors, although there is no harmony in the cases on any phase of the question. So, while it was said in *Rex v. Ketteridge* that "If a juror, after the judge has summed up, in any criminal trial separates himself from his colleagues and, not being under the control of the Court, converses or is in a position to converse with other persons, it is an irregularity which, in the opinion of the Court, renders the whole proceedings abortive, and the only course open to the Court is to discharge the jury and commence the procedings afresh," there are American cases noted in *Ann. Cas.* 1914A, 738 which hold that while such a separation is an irregularity which creates a presumption of prejudice, it is rebuttable and does not, except in capital cases, necessarily require a new trial if it is shown that the defendant was not prejudiced.

Cases collected in highly useful annotations found in 34 *A. L. R.* 1115, and 79 *A. L. R.* 821, show that there is respectable support for each of many divergent and conflicting views of the effect of the separation of juries in criminal cases after submission and before verdict. For instance it has been held that it is within the discretion of the court to permit such separation, and that it has no such power (79 *A. L. R.* 836, 34 *A. L. R.* 1212), that where the separation is authorized by the court there is no presumption of prejudice but that the burden is on the defendant to show prejudice, that in such a case prejudice is presumed, and the burden is on the prosecution to overcome the presumption (34 *A. L. R.* 1214, 79 *A. L. R.* 837), that where the separation is not authorized by the court prejudice will not be presumed, that in such a case an irrebuttable presumption of prejudice arises (34 *A. L. R.* 1214), that separation of the jury in capital cases after finding but before rendition of verdict creates an irrebuttable presumption of prejudice and that it creates a rebuttable presumption of prejudice. 34 *A. L. R.* 1231, 79 *A. L. R.* 842.

While it is impossible to harmonize these divergent and discordant views, it may nevertheless be said that they all reflect the common purpose of insuring to the defendant in a criminal case a fair and impartial trial and a just verdict, and the measure of their departure from the strictness of the ancient common law rule is ordinarily in direct ratio to the gravity of the charge. So in capital cases, nearly everywhere, such a separation is held to create an irrebutable presumption of prejudice, in felonies the weight of authority sems to support the view that it creates a presumption of prejudice which the prosecution must remove, while in misdemeanors the weight of authority inclines to the view that where the circumstances justify a reasonable inference that prejudice may have resulted, the burden is on the prosecution to show that defendant was not prejudiced, that where no such inference is warranted the burden is on the defendant to show that he was prejudiced.

In dealing with the issue of prejudice or not, consideration should be given to such factors as these, that the jurors may hear and be influenced by unsworn statements, that in mingling with the general public they may be affected by popular hysteria or emotional appeals, the probability that the defendant, who is ordinarily in custody and under restraint, would have no knowledge of the conduct of jurors after they had separated and mingled with the general public, and would not therefore ordinarily be able to prove prejudice even if it existed, and that the defendant has the right to poll the jury before their verdict is recorded, and that occurrences during their separation might affect the jurors' answers to questions asked in the course of that procedure.

The precise question under consideration does not appear to have been presented in this court, probably because the uniform practice in this state has been to keep juries to whom a case has been submitted together until they have reached and returned or sealed a verdict, although *Hechter v. State,* 94 Md. 429, 50 A. 1041, 1043, has its analogies. In that case it was held that a jury

which had separated after it had signed and sealed a verdict might thereafter make such amendments and only such amendments as would make the sealed verdict correspond with the oral verdict. In reaching that conclusion the court said: "But it was contended that it would be a dangerous practice to allow sealed verdicts to be corrected or changed after the jury have separated, and have an opportunity to be influenced in an improper and illegal way. In this we entirely agree, and hence we think that the right to amend or correct a sealed verdict should be limited to such correction or amendment as will make the oral verdict given in court correspond substantially with the sealed verdict."

From this examination of the question this court is led to the conclusion that the better rule and one consistent with a just regard for the fundamental right of persons on trial for criminal offences to a fair and impartial trial on the one hand, and for the comfort and convenience of jurors on the other, is that, in the trial of misdemeanors, the mere separation of the jury with the consent of the court after the case has been submitted to them and before their verdict is returned will not of and by itself vitiate the verdict, if it is clear from the surrounding facts and circumstances that the defendant was not prejudiced thereby, but that if the circumstances permit a rational inference that prejudice may have resulted, the burden is upon the State to show that in fact no prejudice did result from the separation.

Applying that rule to the facts of this case, it cannot be said that the separation of the jury vitiated their verdict. The practice of allowing juries in any criminal case, or even in civil cases, to separate after the case is committed to them and before their verdict is returned, or sealed, or they have been discharged for failure to agree, is dangerous and should not be encouraged, and the case of *Stout v. State*, 76 Md. 317, 25 A. 299, 303, cited in support of it, is not in point. In that case, in the course of and not after the close of the trial a sick juror occupied a room apart from his fellow jurors, but he was alone,

in the custody of the sheriff, without opportunity of mingling or communicating with other persons, and even in that case the court said: "Of course, the separation should only· be allowed when attended with those precautions and safeguards necessary to secure entire freedom from approach or external influence of any kind. *Neal v. State*, 64 Ga. 272; *State v. Payton*, 90 Mo. 220, 2 S. W. 394; *Coleman v. State*, 59 Miss. 484; *State v. O'-Brien*, 7 R. I. 337; *Goersen v. Commonwealth*, 106 Pa. 477; *People v. Bonney*, 19 Cal. 426; 1 *Bish. Crim. Pro.* secs. 993, 994; 12 *Amer. & Eng. Enc. Law.* 371."

Nevertheless, in this case the conclusion from the agreed statement of facts is that the defendant was not prejudiced by the separation of the jury. They had agreed upon their verdict before they separated, and the very verdict upon which they agreed they later returned without modification or amendment. Their verdict must therefore have been based entirely upon what took place before the separation, wholly unaffected by anything that may have occurred thereafter. There was no offer to show prejudice, nor any demand that the jury be polled, and since the defendant was not injured or prejudiced by the separation, it did not vitiate the verdict, and the judgment thereon must be affirmed.

The State's contention that the question which has been considered and decided is not properly before this court is found to be highly technical and relatively unimportant. Defendant objected to the return of the verdict as soon as he learned of the separation, and before the verdict was returned, and he thereafter made it the basis of a motion in arrest of judgment. Conceding that the motion in arrest was not appropriate, the written objection of the defendant, taken in connection with the certificate of the trial judge, was sufficient to present the question. In *Sharpless Separator Co. v. Brilhart*, 129 Md. 82, 88, 98 A. 484, the court cited with approval this statement made in *Long v. Hawken*, 114 Md. 234, 79 A. 190, 192. "As to the motion to dismiss the appeal, we need only say that the appeal is from the order

and determination of the court in granting the defendant's motion to quash the summons and the return of the sheriff thereon, and in such cases the appeal brings up the record for review by this court. *Shaffer v. Gilbert,* 73 Md. 66, 20 A. 434; *Coulbourn v. Fleming,* 78 Md. 210, 27 A. 1041. When the motion rests on questions of fact, the evidence ought to be certified and presented by bills of exceptions properly authenticated and filed in the case. *Dumay v. Sanchez,* 71 Md. 512, 18 A. 890; *Palmer v. Hughes,* 84 Md. 659, 36 A. 431; *New & Sons v. Taylor,* 82 Md. 40, 33 A. 435. In the present case there was no bill of exceptions, but the record itself discloses the questions passed upon and decided by the court below. The motion to dismiss will be overruled." In this case the record shows that the precise point argued in this court was made and decided in the trial court, and the appeal is not only from the judgment but also from the order overruling defendant's objection, and the facts extrinsic to the record but relevant to the question have been certified to this court by the trial judge. To refuse to review the case under those circumstances because there is no formal bill of exceptions would be to sacrifice substantial rights to needless formality. 2 *Poe, Pl. & Pr.,* secs. 312, 313. Upon examination the cases cited to the contrary are found not to be inconsistent with these views. It follows, however, from what has been said, that since there was no reversible error in the action of the trial court in taking the verdict over defendant's objection, that the judgment from which this appeal was taken must be affirmed.

*Judgment affirmed, with costs.*