AARON PHILIP MAGWOOD *v.* STATE OF MARYLAND

[No. 67, September Term, 1980.]

*Decided October 14, 1980.*

The cause was submitted on briefs to GILBERT, C. J., and LOWE and MASON, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Patricia A. Logan, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Diane G. Goldsmith, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Mark A. Binstock, Assistant State's Attorney for Montgomery County,* for appellee.

GILBERT, C. J., delivered the opinion of the Court.

We herein hold that whenever a criminal case has been submitted to the jury for its deliberation, a separation of the jury prior to verdict, without the express consent of the accused, is ordinarily reversible error.[1]

The facts giving rise to our holding are uncomplicated. Aaron Philip Magwood (Magwood) was tried in the Circuit Court for Montgomery County for violation of this State's Controlled Dangerous Substances Laws. Md. Ann. Code art. 27, § 286 (a) (1).

On appeal to this Court, Magwood argues that 1) the trial court erred when it allowed the jury, after deliberations on the verdicts had begun, to separate overnight; and 2) error was committed when a State's witness was permitted to testify "as to his previous contacts with the [a]ppellant."

The State asserts that Magwood waived the right to object to the separation of the jury, and that there was no error in the admission of the challenged testimony.

Md. Cts. and Jud. Proc. Code Ann. (1980 Repl. Vol.) § 8-304 provides:

> "The jurors sworn to try a criminal action may, at any time *before the submission of the case to the jury,* in the discretion of the court, be permitted to separate or may be kept in charge of proper officers." (Emphasis supplied.)

The Maryland cases unanimously hold that it is permissible, in the discretion of the trial judge, to allow a jury to separate *prior to the submission of the case to the jury* for its deliberation on the evidence.[2] *See, e.g., Veney v.*

---

**1.** We have deliberately said "ordinarily" because emergencies may arise that necessitate a juror to be separated, temporarily, without the possibility of taint.

**2.** According to 3 Blackstone (Lewis Ed. 1902) * 375, the Common Law provided a very practical way of assuring that no deadlock occurred. Blackstone states, "The jury, after the proofs are summed up, . . . withdraw from the bar to consider of their verdict; and, in order to avoid intemperance and causeless delay, are to be kept without meat, drink, fire, or candle, unless by permission of the judge, till they are all unanimously agreed. A method accelerating unanimity [that is] not wholly unknown in other constitutions of Europe. . . ."

*Warden, Maryland Penitentiary,* 259 Md. 437, 271 A.2d 133 (1970); *Midgett v. State,* 223 Md. 282, 164 A.2d 526 (1960), *cert. denied,* 365 U.S. 853, 81 S. Ct. 819, 5 L. Ed. 2d 817 (1961); *Williams v. State,* 19 Md. App. 582, 313 A.2d 700, *cert. denied,* 271 Md. 747 (1974); *Gordon v. State,* 14 Md. App. 245, 286 A.2d 833 (1972); *Graef v. State,* 1 Md. App. 161, 228 A.2d 480, *cert. denied,* 246 Md. 755 (1967). Prejudice to an accused as a result of the separation is never inferred simply from the separation *per se.* The accused bears the burden, upon challenge, to demonstrate, if he or she can, that the separation of the jury contaminated its findings. *Graef v. State, supra.*

While, as we have seen, the cases are many in regard to separation of the jury before deliberations, there is a sparsity of cases concerning separation *after* deliberations have started but before verdict. Three Maryland cases have heretofore addressed the issue: *Kennard v. State,* 177 Md. 549, 10 A.2d 710 (1940); *Stout v. State,* 76 Md. 317, 25 A. 299 (1892); and *Reemsnyder v. State,* 46 Md. App. 249, 416 A.2d 767 (1980).

*Kennard* discusses a situation wherein the jury was given permission by the trial judge to separate after the onset of their deliberations but before verdict. The Court upheld the conviction of Kennard, notwithstanding the separation. *Kennard,* however, was limited to misdemeanor offenses. While the ancestor of current Courts Art. § 8-304, was originally enacted by Laws 1935, ch. 385, it was not discussed or even raised in *Kennard.* Hence, its effect on the ultimate decision in that case was nil. Stated more simplistically, *Kennard* was decided as if the statute were nonexistent.

In *Stout* a juror became ill during a recess. The juror was allowed to go to bed in the hotel where the jury was quartered. When the jury reassembled in the courtroom the sick juror was still abed. The court then adjourned until the next morning at which time all 12 jurors were present. Turning back an argument that the separation of the jury mandated its discharge, the Court said, at 329-30:

"In the trial of capital cases, even, there are many

occasions when in reason, and a proper regard to the needs of humanity, it may become necessary to allow a temporary separation of the jury, without necessarily breaking up the trial, and that even after the jury have retired to consider of their verdict, otherwise protracted trials could seldom be brought to a final conclusion. Of course, the separation should only be allowed when attended with those precautions and safeguards necessary to secure entire freedom from approach or external influence of any kind." (Citations omitted.)

*Stout* is inapposite to the instant case for at least two reasons: 1) it concerned the emergency situation to which we have alluded in note 1, *supra;* and 2) it was decided long before the enactment of Laws 1935, ch. 385.

*Reemsnyder* concerned a case in which a juror was stricken with "pain or breathing difficulties" after the case had been submitted to the jury for deliberation. The juror was taken to a hospital by a rescue squad and admitted to the "coronary care unit." Because the juror was physically unable to continue in service, the panel was reduced to eleven jurors. A mistrial was declared. When the case was called anew, Reemsnyder raised the defense of double jeopardy. In disposing of that defense, adversely to Reemsnyder, we, speaking through Judge Thompson, said that illness of a juror under the circumstances of the case justified the declaring of a mistrial on the ground of manifest necessity, and the constitutional defense of double jeopardy did not apply.

The Court of Appeals of California, in *People v. Chain,* 22 Cal. App. 3d 493, 99 Cal. Rptr. 472 (1971), *rehearing denied,* January 25, 1972, *hearing denied,* February 23, 1972, held that the deletion from a former statute, very similar to Maryland's present one, of the phrase "at any time before submission of the cause to the jury," allowed the trial judge to let the jury separate, under proper admonition. In an earlier case, decided while the words, "at any time before submission," etc., were viable, the Court in *People v.*

*Werwee,* 112 Cal. App. 2d 494, 246 P.2d 704 (1952), *hearing denied,* August 28, 1952, held that it was reversible error in a criminal case to permit the jury to separate after the case was submitted to the talesmen and before verdict.

Both of the cited California cases bolster Magwood's argument relative to the effect of Courts Art. § 8-304 — the later case, indirectly, and the earlier, directly.

The authorities are divided on the question of the judge's discretion in permitting a jury in a criminal case to separate prior to verdict once the case is submitted to it. Those holding that it is within the discretion of the judge are fairly represented by *People v. Chain, supra; People v. Austin,* 185 Col. 229, 523 P.2d 989, 993 (1974), *rehearing denied,* July 15, 1974; *Bryant v. State,* 246 Ind. 17, 202 N.E.2d 161, 163 (1964); *State v. Johnson,* 216 N.W.2d 337, 339 (Iowa 1974); *State v. Atwood,* 83 N.M. 416, 492 P.2d 1279, 1284 (1971), *cert. denied,* 83 N.M. 395, 492 P.2d 1258 (1972); *State v. Bynum,* 282 N.C. 552, 193 S.E.2d 725, 729, *cert. denied,* 414 U.S. 836 and 414 U.S. 869 (1973); *State v. Williams,* 39 Ohio St. 2d 20, 68 Ohio Ops. 2d 12, 313 N.E.2d 859, 863 (1974).

Those holding a contrary view are: *Raines v. State,* 65 So. 2d 558, 559-60 (Fla. 1953), *rehearing denied,* June 2, 1953; *People v. Ritzert,* 17 Ill. App. 3d 791, 308 N.E.2d 636, 639 (1974); *State v. Luquette,* 275 So. 2d 396, 400 (La. 1973); *Ford v. State,* 330 P.2d 214, 215-16 (Okla. Crim. 1958).

Irrespective of how other States may view the question, the Maryland statute, Courts Art. § 8-304, expressly sanctions a separation of a jury, in the sound discretion of the trial judge, exercised at any time prior to the submission of the cause to the jury and implicitly forbids the separation of the jury before verdict or a judicial abortion of that verdict, at any time after the cause has been submitted for deliberation.

Notwithstanding what we have said, the parties have, with the acquiescence of the trial judge and under proper instructions, the right to waive the requirement that the jury remain together after the issue is submitted to them.

That is precisely what the State argues Magwood did in the instant case.

We have no quarrel with the contention that Magwood's trial counsel waived any right to object to the separation of the jury, but the record does not support the conclusion that Magwood concurred in that separation, or that he was even present when his counsel, in a backhanded sort of way, agreed to the jury's being allowed to separate even though deliberations on the evidence had commenced. With respect to waiver by counsel, the record reflects:

> *"Counsel, would you come to the bench one moment, please.*

(At the bench.)

THE COURT: Would there be any disagreement if I advise the jury that they should proceed with their deliberations themselves and that if they conclude that they need a rest for dinner, that it can be made available to them, and if they conclude the dinner and are unable to arrive at a verdict tonight, that they can be recessed until tomorrow, and they would not be sequestered?

MR. LOHM [defense counsel]: I have no objection.

MR. BINSTOCK [Ass't State's Attorney]: Well, I have no objection to the first part, but the second part, I don't want to encourage them to think that they can at 7:00 o'clock say they are going to come back tomorrow when it is more appropriate for a time later on when we determine they are unable to reach a verdict.

THE COURT: My problem with that ... is that these people were in the panel sometime after 3:00 o'clock, and they have had no opportunity to communicate with their homes or anything like that, and if they get in there and decide they are unable to arrive at a verdict today, and you know it is going to be protracted and prolonged, that if there is any questions in their minds, I want them to know they can ask leave of the Court to rest tonight.

MR. LOHM: I agree with that.

MR. BINSTOCK: I have no objection under the circumstances. I wanted to point out to the Court that some Judges are leery about sending a controlled dangerous substance into a jury room with a jury.

MR. LOHM: They may try to see if the chemist was right.

THE COURT: I'm going to let them have it.

(In open court.)

THE COURT: Ladies and gentlemen, you may retire for your deliberations now. I'm going to give you some leave to consider among yourselves the course of your deliberations, taking into account the hour of the day and the time in which you were impaneled. You should consider whether or not you can arrive at a verdict in a reasonable time. If you believe you can't, and you find or determine that it would be appropriate for you to indulge in some dinner, I would advise you that we can make arrangements upon request to the bailiff for you all to be served at a nearby restaurant.

You would have to be together and remain together at that restaurant, and from experience I have found that that constitutes about an hour-and-a-half interruption in deliberations. Now, you may want to take that into account. I would want you to know that if you believe that you are unable to arrive at a verdict tonight and wish to make a request of the Court, I will consider such a request for a recess overnight, and then you would have to return here tomorrow to finish your deliberations.

These are judgments for you to make with respect to how you think you're proceeding with your deliberations. I suggest to you that you return now and see when you can arrive at a verdict." (Emphasis supplied.)

A clear rational inference may be drawn from the trial judge's opening remarks, *"Counsel, would you come to the bench one moment, please,"* that the judicial invitation was limited to the addressees, *counsel.* We infer that the appellant, Magwood, was not a participant in that discussion, and, thus, he did not personally waive his right to have the jury remain intact during its deliberative period.

Recently, the Court of Appeals, in *Hughes v. State,* 288 Md. 216, 421 A.2d 69 (1980), reversed this Court's holding (*see* 43 Md. App. 698, 407 A.2d 330 (1979)) that a defendant's presence was not required at a hearing before an administrative judge where a continuance to obtain private counsel was sought by the defendant.[3] Certainly, if it is reversible error not to have the accused present in that situation, it is no less reversible error to allow a deliberating jury to separate unless the accused personally waives the sequestration. Both situations involve fundamental rights going to the essence of a fair trial.

Subsequent to the above-quoted bench conference, a second discussion occurred. The record does not disclose where it took place but does reveal the following:

> "THE COURT: For the record, I have received two notes from the jury, which I have furnished to the Defendant and State's attorney, and have written responses to those, which I have advised both counsel and showed them the responses, and with their concurrence will submit them to the jury. We will recover those when the jury renders its verdict. I just wanted that on the record, what has been going on.
>
> The bailiff tells me that the jury has requested that it be permitted to go home overnight, and in view of the number of questions with respect to

---

**3.** The Court did not hold that a continuance would be justified under those circumstances, but merely that the accused had a right to be present when the question of a continuance *vel non* was considered.

request for recess and an opportunity to eat, and further to call home and so forth, this hour now at 10 — almost five minutes of 10:00, it seems to me that that is appropriate.

It would be my intention to tell them to be back in this deliberating room at 9:30 in the morning to resume their deliberations at that time. I would admonish them not to discuss this case among themselves or with anyone else, or to do any explorations with respect to any of the matters before them, and to just disregard the case as best they can until tomorrow.

MR. LOHM: I request that they specifically be instructed not to take it upon themselves to go to any dictionaries or any other source for the information that they have been asking, or any other information for that matter.

THE COURT: I will do that.

All right, bring the jury in.

(Whereupon, jury enters the courtroom at 9:57 p.m.)

THE COURT: Ladies and gentlemen, the bailiff has indicated to me that it is the jury's desire to recess for the night and go home and return tomorrow morning; is that correct?

THE JURY: Yes.

THE COURT: I'm going to permit you to do that, and I know that I indicated earlier that I would countenance that information and, of course, I would not sequester you overnight. I'm going to permit you to go to your individual homes, but I must give you some admonitions with respect to this, and I hope that you will keep them fully in mind, because not only have counsel and the witnesses and the parties and the Court now invested substantial efforts in these matters, but you, too. So I don't want anything to happen that

would cause the whole matter to be aborted and waste efforts that we have undertaken.

This matter must be decided solely on the basis of what was presented to you in this courtroom. So you must not discuss this case among yourselves or with anyone else overnight, and in particular, in view of the nature of some of your questions, I admonish you not to do any research yourself or examine any dictionaries looking for the definitions of terms or other matters of that kind.

These two matters, determining the law and the facts of this case, are to be decided solely among you on the basis of what was presented to you today. I'm sure that you all have respect for each other's oaths, your own and your obligations to the Court, to the State and to the Defendant in this case, not to violate them.

I have earlier proceedings in the morning, and so I'm going to ask you to be here at 9:30, and be in this deliberation room and start at that time and resume your deliberations. You are now excused to go to your homes and return at that time.

As you go down the corridor here, there is a security officer and he is available to escort any of you, if you have the need for an escort, to your cars before you go home.

Good night and have a pleasant night as well.

A JUROR. Can we ask a question, if possible, or write it out and get the answer in the morning?

THE COURT: You want to write out the question.

A JUROR: Do they all —

THE COURT: Wait a minute. Ladies and gentlemen, if you have a question, sit down. You can give it to me.

A JUROR: Do both decisions have to be the same? We have two counts.

THE COURT: In my instructions to you, you have two counts, a verdict on each count. You must be convinced beyond a reasonable doubt that he committed each of the offenses or that he did not, or that they have not proven it.

A JUROR: Can we be hung on one and vote on the other?

THE COURT: If it comes to that. If it comes to that.

THE FORELADY: We will fight in the morning.

THE COURT: All right. Thank you.

(Whereupon, the above-entitled matter was adjourned; the jury to complete its deliberations on 9-19-79.)"

While it may be argued that the appellant was present during the latter discourse and thereby waived his right to object to the separation of the jury by failing to interpose an objection thereto, we turn aside such a contention. We do so because we are of the view that there can be no waiver, in the circumstances, unless it is shown that the defendant knew that he had the right to object to the separation of the jury. Although there are situations where one may waive by silence or inaction, *see Noble v. State,* 46 Md. App. 154, 416 A.2d 757 (1980), the happenings in the instant case are too fundamental to the rights of a defendant for us to infer waiver by silence.

We hold then that, absent an emergency,[4] no jury in a criminal case may be separated, after the issue has been submitted to them, and before verdict, unless the record affirmatively shows that the accused has personally waived the right to require the jury to be sequestered during its deliberative process. We so hold because by allowing the jury to separate after it has started its deliberation greatly enhances the opportunity for outside interferences, influences, taint or tampering.

---

4. *See* Reemsnyder v. State, *supra.*

Inasmuch as the record does not reflect that the appellant, Magwood, waived objection to the jury's separation, the separation during deliberation was fatal to the State's prosecution.

In view of our holding on the first issue raised by Magwood,[5] it is unnecessary to consider the second issue.

*Judgment reversed.*
*Costs not to be reallocated under*
*Md. Rule 1082 f.*

---

5. In the first appeal, Magwood v. State, No. 9, September Term, 1980, filed September 18, 1980, we vacated the judgment of the circuit court in another narcotics case involving Magwood for the reason that the court failed to comply with Md. Rule 735.